IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERESA HIPPLE | : | CIVIL ACTION |
| f/k/a TERESA CONCEPCION | : | |
| | : | |
| v. | : | |
| | : | |
| CLEMENT HIPPLE, et al. | : | NO. 12-1256 |

**MEMORANDUM OF DECISION**

THOMAS J. RUETER                                                                                    December 18, 2017
United States Magistrate Judge

       Presently before the court is Plaintiff's Motion to Declare the Registration of the "Steel Seal" Trademark by Hipple to Have Been Fraudulently Obtained (Doc. 211) (the "Motion"). In response to the Motion, defendant Clement Hipple ("Hipple"), proceeding pro se, filed a Motion to Dismiss (Doc. 215). Plaintiff filed a Response in Opposition to the Motion to Dismiss (Doc. 216). On December 15, 2017, the court held a hearing on the motions.

       For the reasons explained below, the court grants plaintiff's Motion insofar as the court finds that on May 24, 2013, when Hipple filed an application to register the trademark "Steel Seal" in the name of BBB Management Group, LLC ("BBBM"), neither BBBM nor Hipple was the owner of the trademark "Steel Seal." See Doc. 211, Exh. A. Rather, in May, 2013, that trademark was owned by SCIX, LLC ("SCIX"), which adopted the trademark and used it since 1999. Because Hipple knowingly misrepresented on the trademark application that the trademark "Steel Seal" was owned by BBBM, the court finds based on clear and convincing evidence that the registration of the trademark with the U.S. Patent and Trademark Office (the "PTO") was obtained fraudulently. Accordingly, the plaintiff's Motion (Doc. 211) will be **GRANTED** and Hipple's Motion to Dismiss (Doc. 215) will be **DENIED**.

In support of this conclusion, the court makes the following Findings of Fact and Conclusions of Law:

I. **FINDINGS OF FACT**

1. Plaintiff, Teresa Hipple and defendant, Clement Hipple, were married in 2001 and divorced in 2010. Hipple operated SCIX, a company founded in 1999 under the laws of the State of Delaware. The exclusive business of SCIX was the sale of "Steel Seal," an automotive repair product used to seal blown head gaskets. Hipple v. Hipple, 2016 WL 320216 at *1-2 (E.D. Pa. Jan. 27, 2016). SCIX adopted and used the trademark "Steel Seal" when selling its product. (Doc. 126, Stipulation of Facts at ¶ 5) (hereinafter "Stip. Facts").

2. In 2002, at the request of her then husband, plaintiff lent SCIX a total of $350,000, funds she received from the settlement of a car accident claim. The parties executed promissory notes. In February 2003, pursuant to such notes, plaintiff received judgments in the aggregate amount of $354,159 in favor of plaintiff and against SCIX. The judgments were recorded in the Court of Common Pleas for Bucks County, Pennsylvania (Case Nos. 2003-00972; 2003-0974) (Stip. Facts at ¶¶ 24-26).

3. After the parties divorced, SCIX stopped making payments to plaintiff pursuant to the promissory notes. In September, 2010, plaintiff commenced garnishment proceedings against SCIX and recovered $53,524.14 from the company's bank accounts. Hipple, 2016 WL 320216, at *3. This action prompted Hipple to foreclose on certain tangible assets of SCIX pursuant to a security agreement to satisfy a judgment he obtained against SCIX. Id. at *5. In October, 2010, Hipple seized certain assets of SCIX (hereinafter, the "Repossessed Assets"), in satisfaction of the loans. See Trial Exh. P-15, Exh. A. Three patents and SCIX's trademark

2

"Steel Seal" were not included in the list of Repossessed Assets that were seized by Hipple. Id.; N.T. 7/27/2015 at 196; N.T. 7/31/15 at 40-41, 51; Trial Exh. D-6. See also Hipple, 2016 WL 320216, at *5 (listing of assets taken by defendant); Trial Exh. P-25 at ¶ 46 (Hipple Affidavit which states, "The assets listed in the Inventory are the only assets of SCIX that I took in satisfaction of the Hipple loans"); Id. at ¶ 51 ("I also did not enter into any agreement with SCIX which provided me the exclusive right to advertise, market and/or sell the product or its logos or which precluded SCIX from continuing to market or sell the product.").[1] On October 18, 2010, Hipple sold the Repossessed Assets to a newly created company called "Complete Group" in exchange for a 50% interest in that company. (Trial Exh. P-15.) Hipple's significant other, Emily Dominguez, held the other 50% ownership interest in Complete Group. Hipple, 2016 WL 320216, at *5.

4. On October 29, 2010, Complete Group entered into a Licensing Agreement with Steel Seal Pro, LLC, a new company formed by defendant's son, Brian Hipple, to market and sell Steel Seal. (Trial Exh. P-14.) Brian Hipple was the sole owner and operator of Steel Seal Pro, LLC. (Stip. Facts at ¶¶ 45-47.) Pursuant to the terms of the Licensing Agreement, Steel Seal Pro would be paid $10,000 per month, and the remainder of the proceeds from sales of Steel Seal would be paid to Complete Group. See Trial Exh. P-14; see also Hipple, 2016 WL 320216, at *5.

---

[1] Hipple filed a UCC Financing Statement with the Pennsylvania Department of State listing several assets of SCIX as collateral, which included the "Steel Seal logo, ads, rights to the name." (Trial Exh. P-11.) However, Hipple did not repossess or foreclose on those intangible assets. In fact, the consideration from the sale of the repossessed tangible assets exceeded the debt owed to him by SCIX. See Hipple, 2016 WL 320216, at *5, *14. See also N.T. 7/28/15 at 48; N.T. 7/31/15 at 69.

5. Steel Seal Pro, LLC used the same website, phone number, logo, assets and means of business used by SCIX. Hipple, 2016 WL 320216, at *7.

6. On March 12, 2012, plaintiff filed a complaint in the present case alleging that Hipple made a fraudulent conveyance of the tangible assets of SCIX to prevent plaintiff from recovering on her judgments against SCIX. (Doc. 1.)

7. After Brian Hipple's death in September, 2012, Hipple purported to transfer the right to manufacture, market, and sell, Steel Seal from Complete Group to BBBM, an entity which was owned entirely by Hipple. Hipple, 2016 WL 320216, at *7.

8. On May 24, 2013, Hipple filed an application with the PTO to register the trademark "Steel Seal." (Doc. 211, Exh. A.) In the application, Hipple stated that the "owner of the mark" was "BBB Management Group, LLC." The application further stated that the mark was first used "at least as early as February 28, 1999."

9. Pursuant to default judgment proceedings, on March 1, 2016, the court entered judgement in favor of plaintiff Teresa Hipple and against defendant SCIX, LLC in the amount of $556,530.99. (Doc. 174.) In addition, after a non-jury trial held in July, 2015, this court entered a judgment order, dated March 1, 2016, entering judgment in favor of Teresa Hipple and against defendant Clement Hipple in the amount of $427,507.09. (Doc. 175.)

10. Plaintiff commenced post judgment execution proceedings pursuant to Fed. R. Civ. P. 69. On April 13, 2016, the court appointed Gerald S. Berkowitz, Esq., counsel for plaintiff, as receiver for SCIX, LLC. (Doc. 186.)

11. On April 19, 2016, Hipple attempted to cause BBBM to assign its ownership of the Steel Seal trademark, website, and domain to an entity, Steel Seal Ltd, which is domiciled in the United Kingdom. (Doc. 211 at ¶ 27.)

12. On April 28, 2016, BBBM filed a Chapter 7 bankruptcy petition in the Eastern District of Pennsylvania, Case No. 16-13025-JFK. (Doc. 211 at ¶ 26.)

13. On May 10, 2016, the court ordered Hipple to transfer his membership interest in BBBM in partial satisfaction of the judgment entered by this court in favor of plaintiff and against Hipple. The court also enjoined Hipple from transferring any asset or interest of BBBM. (Doc. 192.)

14. Hipple filed documentation with the PTO that purported to record the assignment of the Steel Seal trademark from BBBM to Steel Seal, LLC. (Doc. 211, Exh. D.)

15. On August 31, 2017, the Bankruptcy Court dismissed the BBBM bankruptcy case because "it lacks a legitimate bankruptcy purpose." (Doc. 211, Exh. E.)

## II. CONCLUSIONS OF LAW

16. This court has jurisdiction to decide the Motion because it is part of the action to collect on the two judgments entered by this court against SCIX and Hipple. See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298, 314 (3d Cir. 2006), cert. denied, 549 U.S. 821 (2006). See also Marshak v. Treadwell, 240 F.3d 184, 193 (3d Cir. 2001) (Federal courts have concurrent authority with the PTO to cancel registered marks when the validity of the mark is called into question in a judicial proceeding) (citing 15 U.S.C. § 1119).

17. The determinative question raised by the Motion is whether BBBM

owned the "Steel Seal" trademark when Hipple made the application to the PTO on behalf of BBBM. The court finds that BBBM did not own the trademark at that time, but rather SCIX owned it.

        18.    SCIX applied to register a trademark "Scientific Steel Seal" with the PTO, on April 7, 1999, listing itself as the "owner," but later failed to provide required paperwork to the PTO. (Doc. 211, Exh. A; Hipple testimony 12/15/17.) Accordingly, the PTO Office marked the registration as "abandoned." Id. See 37 C.F.R. § 2.65 (setting forth when an application will be deemed abandoned). However, this administrative action on the trademark "Scientific Steel Seal" is not determinative of ownership of the trademark "Steel Seal." Abandonment of an application for registration does not constitute abandonment of ownership of trademark. See Morehouse Mfg. Corp. v. J. Strickland & Co., 407 F.2d 851, 881 (3d Cir. 1969) ("[T]he acquistion of the right to exclude others from the use of a trademark results from the fact of use and the common law, independently of registration in the Patent Office."); Alfred Dunhill of London, Inc. v. Kasser Distillers Prods. Corp., 350 F.Supp. 1341, 1369 (E.D. Pa. 1972) (Becker, J.) ("[T]he validity of the registration will not affect the plaintiff's common law trademark rights, for the right to exclude others arises from use, not registration.") aff'd, 480 F.2d 917 (3d Cir. 1973). See also 3 McCarthy on Trademarks and Unfair Competition § 20.1 (5th ed. 2017) ("Common-law ownership rests upon use, not upon registration. While a federal registration gives its owner very important legal rights and benefits, the registration does not create the trademark. The cancellation of a registration does not invalidate underlying common law rights in the trademark because those rights do not flow from federal registration.").

        19.    "A party establishes ownership of an unregistered mark by being the first

6

to adopt the mark and continuously use it in commerce; a party does not establish ownership by being the first to register the mark." Xtreme Caged Combat v. ECC Fitness, 2013 WL 6022135, at *8 (E.D. Pa. Nov. 14, 2013) (citations omitted). The Third Circuit has explained:

> With respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce. Tally-Ho, Inc. v. Coast Community College District, 889 F.2d 1018, 1022-23 (11th Cir. 1989) ("actual and continuous use is required to acquire and retain a protectible interest in a mark," while the "first to use a mark on a product ... in a ... market acquires rights in the mark in that market"); Hydro-Dynamics, Inc. v. George Putnam & Co., Inc., 811 F.2d 1470, 1473 (Fed. Cir. 1987) ("trademark rights in the United States are acquired by .... adoption and use, not by registration"); Kohler Mfg. v. Beeshore, 59 F. 572, 576 (3d Cir. 1893) (there must be an intention "to adopt [the mark] as a trademark"); Caesar's World, Inc. v. Caesar's Palace, 490 F.Supp. 818, 822 (D. N.J. 1980) ("Common law rights are acquired in a ... mark by adopting and using the mark...").

Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 292 (3d Cir.), cert. denied, 502 U.S. 939 (1991). See also Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc., 855 F.3d 163, 170 (3d Cir. 2017) ("The first use test is generally proper for unregistered trademarks, taking account of the well-established common law principle of "first-in-time, first-in-right" that rewards actual and continuous use in commerce as between market competitors.").

20. "Trademark ownership inures to the legal entity who is in fact using the mark as a symbol of origin." 2 McCarthy on Trademarks and Unfair Competition § 16:35 (5th ed. 2017). "Only the owner of a trademark may apply to register that mark with the Patent and Trademark Office." Id. "If the entity filing the application was not the owner of the mark as of the filing date, the application is void *ab initio*. This is a statutory requirement and cannot be waived." Id. at § 19:53.

21. It is undisputed that neither Clement Hipple nor BBBM had an ownership

7

interest in SCIX after of January 1, 2001. See Trial Exh. P-25 at ¶ 25 (Hipple Affidavit which states, "After January 1, 2001, I no longer had any membership interest in SCIX."); Id. at ¶ 13 ("After January 1, 2001, I no longer had any control over SCIX, its assets, or any decision making relating to SCIX or its assets.").

22. Although Hipple repossessed certain assets of SCIX as a secured creditor, the trademark "Steel Seal" was not part of the Repossessed Assets. See Trial Exh. P-15, Exh. A; Stip. Facts at ¶¶ 40-43; N.T. 7/31/15 at 40-41, 51. Hipple only assigned the Repossessed Assets to Complete Group. This did not include the "Steel Seal" trademark. Id. Thus, neither Hipple nor Complete Group ever acquired valid ownership of the trademark "Steel Seal" and had no authority to transfer it to BBBM. Id. In addition, because Complete Group never owned the "Steel Seal" Trademark, it did not grant Steel Seal Pro a valid license to use the trademark. See Trial Exh. P-15.

23. There is no evidence that SCIX assigned its right to the "Steel Seal" trademark to BBBM or any other entity. Only the receiver of SCIX, appointed by this court has the right to assign the "Steel Seal" trademark. See Doc. 186.

24. At the time Hipple applied for the registration of the "Steel Seal" trademark by BBBM, he knew that BBBM did not have a valid ownership interest in the "Steel Seal" trademark and that SCIX had the right to the "Steel Seal" mark. See Marshak, 240 F.3d at 196 (to demonstrate that a federal trademark was fraudulently procured, a challenging party must adduce evidence that the registrant actual knew or believed that someone else had a right to the mark).

25. The court is not persuaded by Hipple's argument that SCIX abandoned its right to ownership of the "Steel Seal" trademark. Moreover, because abandonment is in the nature of a forfeiture, it must be "strictly proved." Doeblers' Pa. Hybrids, Inc. v. Doebler, III, 442 F.3d 812, 822 (3d Cir. 2006). The Third Circuit explained as follows:

> The Lanham Act states in relevant part that a "mark shall be deemed to be 'abandoned' ... [w]hen its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prime facie evidence of abandonment." 15 U.S.C. § 1127. A party arguing for abandonment has a high burden of proof. In United States Jaycees v. Philadelphia Jaycees, we held that "abandonment, being in the nature of a forfeiture, must be strictly proved." 639 F.2d 134, 139 (3d Cir. 1981).

Id.

26. The"Steel Seal" trademark was continuously used by SCIX from 1999 until 2010, when Hipple repossessed all of SCIX's tangible assets and, as a result, the company ceased to sell the product. Thus, to the extent that SCIX discontinued the use of the trademark in the marketplace, it was not done voluntarily. See 3 McCarthy on Trademarks and Unfair Competition § 17:11 (5th ed. 2017) ("If valid reasons are given for non-use any inference of an abandonment may be rebutted.").

27. Moreover, Hipple has not shown an intent on the part of SCIX, or the receiver of SCIX, not to resume the use of the Steel Seal trademark either through SCIX or by licensing the trademark to another entity. SCIX was never formally dissolved. (N.T. 7/28/15 at 321.) See EH Yacht, LLC v. Egg Harbor, LLC, 84 F.Supp. 2d 556, 566-67 (D.N.J. 2000) (inquiry should not be limited just to owner's intent to resume use of trademark, but also to the intention of the owner's creditors to resume the use of the trademark).

28. Based on the foregoing Findings of Fact and Conclusions of Law, Gerald

J. Berkowitz, Esq., as the receiver for SCIX, LLC, has the power and authority to apply to the PTO for the cancellation of BBBM's May 24, 2013 trademark registration pursuant to 15 U.S.C. § 1064(3) because BBBM was not the owner of the "Steel Seal" trademark, as Hipple misrepresented on the application. Plaintiff has demonstrated by clear and convincing evidence that the May 24, 2013 trademark registration by BBBM was obtained by fraud.

An appropriate order follows.

BY THE COURT:

  /s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge